## Dice's Administrator v. Zweigart's Administrator, et al.

(Decided December 15, 1914.)

### Appeal from Mason Circuit Court.

1. **Landlord and Tenant—Failure to Repair—Liability in Tort.**—A landlord's promise to repair does not make him liable in damages for the death of a member of his tenant's family, resulting from defective premises.

2. **Damages—Death—Section 6, Kentucky Statutes—Landlord and Tenant—Promise to Repair.**—Section 6, Kentucky Statutes, giving a right of action for death from injury inflicted by negligence or wrongful act does not impose any liability on a landlord for a breach of his promise to repair. That section is confined to torts, and does not cover a case of a breach of an ordinary contract.

FRANK P. O'DONNELL, J. G. WADSWORTH and ALLAN D. COLE for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

John G. Zweigart was the owner of a farm in Mason County which was under lease to Sherman Dice, and had been occupied by him from year to year since March, 1907. John G. Zweigart, who had been paralyzed and unable to walk without assistance for several years, died in December, 1910. J. F. Barber, qualified as his administrator. In January, 1911, about a month after John G. Zweigart's death, Laurence Dice, a son of Sher-

man Dice, and who at the time was five years of age, fell into a cistern near the house on the farm rented by his father, and was drowned.

Sherman Dice, as administrator of Laurence Dice, brought this action against John G. Zweigart's Administrator, his brother, C. F. Zweigart, and his sister, Anna Marie Zweigart, to recover damages for his son's death. A demurrer was sustained to the petition as against C. F. Zweigart and Anna Maria Zweigart, and the petition as to them dismissed. No appeal was taken from that judgment. Afterwards the case as to John G. Zweigart's Administrator went to trial, and at the close of the testimony for plaintiff, the trial court peremptorily instructed the jury to find a verdict in favor of the defendant.

The case is predicated on a promise by decedent to repair the cistern, and on the further fact that he retained control of the cistern for the purpose of making repairs.

The cistern in question is located a few feet from the house occupied by Sherman Dice and family. At the time of the accident it was covered by a large rock. In the center of this rock was a hole. The hole was covered by a plank, and on top of the plank was placed a rock weighing 25 or 30 pounds. There was sleet on the ground, and the little boy requested his mother to let him go sleigh riding. She claims that she refused to permit him to do so. Later on he asked permission to go out and respond to a call of nature. She unbuttoned his trousers and he then left the house. At the same time she cautioned him not to go near the cistern. A little later she called him to her, and receiving no response, went out into the yard. The rock and plank had been removed from the hole in the rock covering the cistern. The boy's sled was near by. On investigation it was found that the boy had fallen into the cistern, and life was extinct. A brother of the boy testified that in July, 1909, his father and mother said to John G. Zweigart that unless he would fix the cistern they would not rent the place for the following year commencing March 1, 1910. Zweigart replied that if they would stay there one more year he would fix the cistern. In April, 1910, witness' father asked Mr. Zweigart what about the cistern. Zweigart answered: "Mr. Dice, I am going to fix that cistern." There is also evidence to the effect that Sherman Dice asked permission to put in a pump and

take it out of the rent, but Mr. Zweigart replied that he was going to see about putting in a pump himself.

This is not a case of an open, unguarded and uncovered cistern, or other condition of the premises which amounted to a nuisance. The cistern was covered, and it became dangerous only because the covering was removed. It is not a case of fraud on the part of the landlord in misrepresenting that he had placed the property in good repair. It is not a case of lease of public property, where the landlord owes some duty to the public and to his tenant. It is not a case where a portion of the leased premises is reserved to the common use of tenants. It is not a case where the landlord reserves control over the premises, or of that defective portion out of which the injury grew. The mere allegation that the landlord reserved control over the cistern, based alone upon the allegation and proof that he promises to repair the cistern, unaccompanied by any contractual reservation to that effect, or exercise of control, does not show such control of the dangerous portion of the premises as to impose any liability on the landlord because of such defective condition. It is not a case involving concealment of defects in the property which are known to the landlord, and unknown to the tenant or not discoverable by reasonable inspection. It is not a case where the landlord undertook to make repairs, and performed the work in a negligent manner. It is simply a case of the landlord's promise to repair the cistern, and of his failure to do so. The only question to be considered, therefore, is whether or not the landlord under these circumstances is liable in damages for personal injuries received by a member of his tenant's family. The child in this case was not on the premises by invitation of the landlord. He was there by virtue of the relation which he sustained as a member of the tenant's family. If there be any liability, therefore, it grows out of that relation, and if the landlord be not liable to the tenant under the same circumstances, he is not liable to a member of the tenant's family. Ordinarily, of course, the landlord is not under a duty to use ordinary care to furnish a tenant reasonably safe premises in which to live. The tenant takes the premises as he finds them. As to him the doctrine of *caveat emptor* applies. Here the dangerous condition was known to the tenant. The law imposed no duty on the landlord to repair the premises, and no liability for personal injur-

ies growing out of the defective condition of the premises. It is difficult to perceive upon what theory a mere agreement to repair could impose a liability not imposed by law. Of course cases may arise where a legal duty arises from a contractual relation, and for a breach thereof an action of tort will lie, but such a case is altogether different from a duty entirely dependent upon a contract in which it is assumed. Where an ordinary contract is violated, the damages are limited to such as are within the reasonable contemplation of the parties. Manifestly, if a third party agreed to repair the cistern, there would be no liability for personal injuries growing out of the failure to repair. Since the duty of the landlord to repair does not grow out of the legal relation existing between him and the tenant, his agreement and failure to repair should subject him to no greater liability than a third party, who had violated his agreement to repair; for such consequences are no more within the contemplation of the parties in the one case than in the other. As was well said by the court in the case of Tuttle v. George H. Gilbert Mfg. Co., 145 Mass., 169, 13 N. E., 465:

"The action of tort has for its foundation the negligence of the defendant, and this means more than a mere breach of a promise. Otherwise, the failure to meet a note or any other promise to pay money would sustain an action in tort for negligence, and thus the promissor be liable for all the consequential damages arising from such failure."

In the recent case of Dustin v. Curtis, (N. H.), 67 Atl. 220, 11 L. R. A. (N. S.) 504, the court, after citing numerous authorities, laid down the following rule:

"In accordance with the foregoing authorities, it may be stated as a principle of law that, where the only relation between the parties is contractual, the liability of one to the other in an action of tort for negligence must be based upon some positive duty which the law imposes because of the relationship, or because of the negligent manner in which some act which the contract provides for is done; and that the mere violation of a contract, where there is no general duty, is not the basis of such an action.

"This being so, and the relation between the parties to this suit being that of landlord and tenant, and it having been decided in Towne v. Thompson, 68 N. H., 317, 46 L. R. A., 478, 44 Atl. 492, that no duty is imposed by

law upon a landlord to make repairs upon leased premises for the benefit of his tenant or a member of the tenant's family, it follows that the present action cannot be maintained because of the mere failure of the defendant to keep her agrement to repair. In fact it is generally held that a tenant, a member of his family or his guest, cannot sue a landlord in tort for personal injuries due to his omission to repair premises which have passed into the possession and control of the tenant, even if the landlord has agreed to make repairs.''

This is the generally accepted rule, and is supported by the great weight of authority. Collins v. Karatopsky, 36 Ark., 316; Hanson v. Cruse, 155 Ind., 176, 57 N. E., 904; Hedekin v. Gillespie, 33 Ind. App., 650, 72 N. E., 143; Shackelford v. Coffin, 95 Me., 69, 49 Atl., 57; Davis v. Smith, 26 R. I., 129, 66 L. R. A., 479, 106 A. S. R., 691, 58 Atl., 630; Sanders v. Smith, 5 Misc., 1, 25 N. Y. Supp. 125; Folsom v. Parker, 31 Misc., 348, 64 N. Y. Supp., 263; Kabus v. Frost, 18 Jones & S., 72; Flynn v. Hatton, 43 How. Pr., 343; Spellman v. Bannigan, 36 Hun., 174; Schick v. Fleischauer, 26 App. Div., 210, 49 N. Y. Supp., 962; Sherlock v. Rushmore, 99 App. Div., 598, 91 N. Y. Supp., 152; Boden v. Scholtz, 101 App. Div., 1, 91 N. Y. Supp., 437; Kusher v. Ginsberg, 99 App. Div., 417, 91 N. Y. Supp., 216; Stelz v. Van Dusen, 93 App. Div., 358, 87 N. Y. Supp., 716; Frank v. Mandel, 76 App. Div., 413, 78 N. Y. Supp., 855; Brown v. Toronto General Hospital, 23 Ont. Rep., 599; Thompson v. Clemens, 96 Md., 196, 60 L. R. A., 581, 53 Atl., 919; Reams v. Taylor (Utah), 8 L. R. A. (N. S.) 436, 87 Pac., 1089; Cronwell v. Allen, 151 Ill. App., 404; Miles v. Janvrin, 196 Mass., 431, 13 L. R. A. (N. S.) 378, 124 A. S. R., 575, 82 N. E., 708; Marcheck v. Klute, 133 Mo. App., 280, 113 S. W., 654; Kusher v. Ginsberg, 188 N. Y., 630, 81 N. E., 1168, affirming 99 App. Div., 417, 91 N. Y. Supp., 216; Schiff v. Pottlitzer, 51 Misc., 611, 101 N. Y. Supp., 249; Goetchius v. Gale, 57 Misc., 192, 108 N. Y. Supp., 1079; Cuilhe v. Ackerman, 58 Misc., 538, 109 N. Y. Supp., 714; Parbridge v. Dykins (Okla.), 113 Pac., 928, 37 L. R. A. (N. S.), 984. Indeed, there are but few cases to the contrary, and it would seem that these cases are based on *dicta* growing out of the caution of courts in stating the general doctrine of non-liability on the part of the landlord for personal injuries growing out of defective premises, rather than actual adjudications on the question. Thus, in the recent case of Anderson v. Robinson (Ala.),

62 So. 512, 47 L. R. A. (N. S.) 330, the court referred to the following language in one of its former opinions:

"As to them, in the absence of covenant to repair, he is only liable for the injuries resulting from latent defects, known to him at the time of the leasing, and which he conceals from the tenant. 24 Cyc., 1114, and cases cited in note 50; Thomp. Neg., Secs. 1130, 1131. If the defect is obvious at the time of the letting, the tenant takes the possession of premises as he found them, and the landlord would not be liable for injuries resulting from said obvious defects to the tenant, his family, servants, or guests."

The court then proceeded to say:

"It may be true that, in stating the rule, we were over cautious in confining it to cases in which there was no covenant to repair, but we did not hold that such a covenant would change the rule of liability, and expressly pretermitted the question further on in the opinion, in dealing with count four of the complaint in said case. In the case at bar, however, some of the counts set up a covenant to repair when the lease was made as a part of the consideration of same, but it seems from the great weight of authority that said covenant does not increase the liability of the landlord, or change the rule above set forth as to the liability in tort to the tenant, his family, servants, or guests for injuries caused by virtue of defects in the rented premises. In other words, it seems settled by the weight of authority that the landlord is not liable in tort for injuries to said class, whether there be a covenant to repair or not, unless the defects existed at the time of the letting, were known to him, and which he concealed from the tenant."

The case is not affected by the provisions of Section 6 of the Kentucky Statutes, which gives a right of action for death from injury inflicted by negligence or wrongful act. That section is confined to torts, and does not cover a case of breach of an ordinary contract. Lewis v. Taylor Coal Co., 112 Ky., 845; Randolph v. Snyder, 139 Ky., 159.

It follows that the trial court properly directed a verdict in favor of defendant.

Judgment affirmed.