## Mahan-Jellico Coal Co. v. Dulling.

April 26, 1940.

Flem D. Sampson, Judge.

Tye & Siler for appellant.

C. B. Upton and R. L. Pope for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellee recovered a judgment against appellant for $750 for injuries received on March 10, 1937, in a fall which she claimed occurred by reason of the breaking of the top tread of a flight of four steps leading from the ground to the porch on the rear of a cottage rented by her and her husband from the appellant. The steps were unusable at the time the lease, apparently a verbal one, was made, and it is not contended that the appellant was under any obligation to repair them. However, appellee testified that on several occasions prior to the date on which she received her injuries, she visited the office of appellant, by whom her husband was employed as a miner, and that pursuant to requests made by her on these visits, the appellant undertook to, and did, send Sam Petrie, Sr., one of its carpenters, to repair the steps, and that it was after Sam Petrie, Sr., had attempted to make the repairs and assured her that the steps were "all O. K.," that she used them for the first time in descending from the kitchen porch to the yard, and that it was upon this occasion that the upper step broke and threw her to the ground on top of a bucket which she was carrying. No witness saw the steps break or the appellee fall; and while appellant admits that it repaired the steps, it claims that the work was done by Sam Petrie, Jr., who testified that he put the steps in good condition but did not assure appellee that they were safe, or have any conversation with her.

He further testified that in May, following the alleged fall, he visited the premises in company with Mr. H. C. Gillis, one of appellant's attorneys, and found the steps unbroken and in the same condition he had left them after making the repairs; and several kodak pictures taken by Mr. Gillis on this occasion were introduced in evidence in support of these contentions. However, appellee and her husband had moved away from the cottage and the town in which it was situated a short time after the alleged accident, and no proof was introduced showing that the broken treads had not been replaced during the interim. Sam Petrie, Sr., was not introduced as a witness and one of appellee's neighbors testified that it was Sam Petrie, Jr., who made the repairs, and that she had a conversation with him while he was doing the work. Appellee claims that as a result of the fall she sustained two broken ribs and suffered a miscarriage, but her testimony is wholly unsupported. The only physician who treated her, apparently the company's doctor, testified that she came to his office the day following the day on which she was injured; that he did not take an X-Ray but found a contusion over the lower ribs and an abrasion on one leg; and that as far as he could discover, no ribs were broken, and he did not observe, and was not informed, that she was pregnant. Asked what treatment he applied, he said:

"For the contusion over the ribs I strapped it with adhesive tape. The abrasion on the leg was disinfected and dressed. I advised her if she was suffering to remain in bed until I saw her the next day."

On the following day, which was the only other occasion on which he saw her, he found her engaged in doing the family washing and getting ready to move. However, she testified that she was in bed on the day when he visited her home; that on the fifth day after the accident, she miscarried, her pregnancy having existed for some six or seven months prior to that time; that the physician had told her that the ribs were broken, and that she continued to suffer four or five weeks from the broken ribs, during which period she remained strapped with the adhesive tape.

With the evidence in this condition, we are requested to adjudge that the damages awarded were ex-

cessive. With more reason, perhaps, appellant might have urged that the weight of the testimony indicated that the steps did not break and that appellee's injuries were sustained in some other manner. However, had this contention been made by appellant, we would have been unable to sustain it for the same reason that we are unable to sustain its contention that the damages awarded were excessive, namely, that the jury and not the court is the judge of the credibility of the witnesses. If appellee testified truthfully, not only did the steps break with her when she attempted to use them, but she received injuries which entitled her to greater compensation than she received at the hands of the jury. No witness testified that she received her injuries in a manner other than that related by her, and the steps were not so constructed or repaired as to make it impossible for them to have broken under the weight of a woman weighing 186 pounds. Whatever may be our view of the probabilities, it was, under the evidence in this case, exclusively within the province of the jury to determine the facts.

Appellant's remaining and major contention is that, conceding that the steps were insufficiently repaired by its agent, and that this negligence was the proximate cause of appellee's injuries, nevertheless, it is not liable in damages because it was under no legal obligation to make the repairs, and this undertaking to do so was without consideration. In support of this argument, appellant's counsel cite several cases decided by this court, in none of which, with the exception of Eblin v. Miller's Ex'rs, 78 Ky. 371, had the landlord attempted to make repairs. No citation of authority was necessary to establish the well-settled doctrine announced in Franklin v. Tracy, 117 Ky. 267, 77 S. W. 1113, 78 S. W. 1112, 25 Ky. Law Rep. 1409, 25 Ky. Law Rep. 1909, 63 L. R. A. 649, that a landlord is not liable to a tenant for injuries sustained as a result of defects existing in the leased premises at the time the lease was made which were unknown to the landlord at that time, even though they were unknown to the tenant and could not have been discovered by him through the exercise of ordinary care. Neither is a landlord obligated to make repairs on the leased premises, unless, as part of the consideration for the lease, he has undertaken to do so. Any agreement by the landlord to repair made after the lease

has been executed is not binding upon him unless supported by a new and valuable consideration. Where such consideration exists and the contract is breached, the landlord is liable to the tenant for the reasonable cost of such repairs, but generally not for damages to his person or goods resulting from the unrepaired defects.

It is obvious, however, that the principles above enunciated and the authorities cited by appellant in support of them can have no application to the facts in the case at bar. As said in Dice's Adm'r v. Zweigart's Adm'r, 161 Ky. 646, 171 S. W. 195, 197, L. R. A. 1916F, 1155, in which the landlord was held not liable for the death of a child drowned in a cistern on the leased premises:

> "It is not a case where the landlord undertook to make repairs, and performed the work in a negligent manner. It is simply a case of the landlord's promise to repair the cistern, and of his failure to do so."

It is true that the case of Eblin v. Miller's Ex'rs, supra, cited by appellant, and in which the repairs were negligently made, seems to militate against the exception, but there the allegation of the petition was that the landlord agreed to have the repairs made by a person regularly employed by him to repair his houses, and this court held that in sending this man to make the repairs the landlord had complied with his contract and was not responsible for the manner in which the repairs were made. In the case at bar the allegation of the petition is, "the defendant attempted to repair same and did do certain work on said steps with the assurance to plaintiff that the same were then usable and safe to be used, and that this plaintiff relied upon said assurance." However, the case of Eblin v. Miller's Ex'rs, if it can be considered in point, was ignored by this court in a much later case, M. Michael & Bro. v. Billings Printing Co., 150 Ky. 253, 150 S. W. 77, 78, in which this court said:

> "It is wholly immaterial whether there was any mistake in the contract of lease or not, or whether it contained any stipulation obliging appellants to make any repairs, because, if they undertook to make repairs or improvements when they were not obliged to do so, it was their duty to make them in

a careful and prudent manner. The general rule is that the tenant takes the premises as he finds them, and, in the absence of a contract imposing upon the landlord the duty to make repairs or improvements, he is under no implied obligation to do so. But notwithstanding this, if the landlord undertakes to make improvements or repairs on a leased building, and he makes them in such a negligent and careless manner as to injure the tenant, the tenant may recover the damages he sustains by reason of this negligence or carelessness, and the instructions given by the court conform to this view of the law. La Brasca v. Hinchman, 81 N. J. L. 367, 79 A. 885; Wertheimer v. Saunders, 95 Wis. 573, 70 N. W. 824, 37 L. R. A. 146; Nahm & Friedman v. Register Newspaper Co., 120 Ky. 485, 87 S. W. 296, 9 Ann. Cas. 209.''

The rule thus announced is supported by the great weight of authority and is entirely consistent with reason and justice. Moore v. Stelges, C. C., 69 F. 518; Flam v. Greenberg, Sup., 158 N. Y. S. 670; Oliver v. Stoltenberg, 24 Cal. App. 637, 142 P. 108; Fulmele v. Forrest, 4 Boyce, Del., 155, 86 A. 733; Rice v. Whitley, 115 Iowa 748, 749, 87 N. W. 694; Mann v. Fuller, 63 Kan. 664, 66 P. 627; Gregor v. Cady, 82 Me. 131, 19 A. 108, 17 Am. St. Rep. 466; Gill v. Middleton, 105 Mass. 477, 7 Am. Rep. 548; Carlon v. City Savings Bank, 82 Neb. 582, 118 N. W. 334; La Brasca v. Hinchman, 81 N. J. L. 367, 79 A. 885; R. C. L., Section 565, pages 1045, 1046.

The allegations of the petition, as well as appellee's testimony, brought her case well within the rule laid down in the authorities above cited. Hence the court did not err in overruling appellant's motion for a directed verdict.

Judgment affirmed.