**Brandon TRUE, Appellant,**

v.

**FATH BLUEGRASS MANOR APARTMENT, Appellee.**

No. 2010–CA–001784–MR.

Court of Appeals of Kentucky.

Dec. 22, 2011.

Randy J. Blankenship, Erlanger, KY, for appellant.

Robert J. Thumann, West Chester, OH, for appellee.

Before CLAYTON, STUMBO and THOMPSON, Judges.

*OPINION*

THOMPSON, Judge:

Brandon True appeals from a summary judgment of the Kenton Circuit Court dismissing his claim against his landlord, Fath Bluegrass Manor Apartment, for injuries sustained when he fell from his apartment balcony. He contends that there are material issues of fact requiring that this Court reverse the summary judgment or, alternatively, remand to the circuit court to consider the application of the Supreme Court's decision in *Kentucky River Medical Center v. McIntosh,* 319 S.W.3d 385 (Ky.2010). We agree with the circuit court that Fath cannot be liable for True's injuries caused by an open and obvious hazard that True was aware of prior to his fall. Further, we hold that, under the facts, *McIntosh* does not apply and, therefore, remand is unnecessary.

On May 13, 2008, True and his girlfriend, Kassie Habermehl, executed a lease agreement with Fath. Prior to occupying the second-floor apartment, the couple walked through the apartment and inspected the premises for defects. As part

of the walk-through, the couple inspected a platform balcony surrounded on three sides by a metal railing secured by screws. The railing had a metal horizontal handhold along its top and a series of equally spaced vertical metal bars connecting it to a horizontal bar along the bottom. Access to the balcony was provided by a sliding glass door, opening from the inside to the balcony's left side.

Following the walk-through, True and Habermehl completed a move-in checklist which acknowledged the condition of the leased premises, including that the balcony rails were "very loose." The lease contained the following provision:

> 10. CONDITION OF PREMISES: Resident acknowledges by signing this Lease Agreement that they accept the premises as is and shall promptly examine the premises and document any defects therein on the Move In/Move Out Inspection Checklist within seven (7) days of move in. There are no representations made by the Landlord, either implied or expressed to alter or improve the premises before or during the term of the Lease Agreement. At the expiration of this Lease Agreement, the Resident agrees to return the premises in the same condition as when occupancy began, reasonable wear and tear expected.

The parties acknowledged that the primary purpose of the checklist was for the tenant to note any damage to the apartment so the tenant's security deposit would not be debited for items noted when the apartment is vacated. In his deposition, True further acknowledged that he knew he was accepting the apartment "as is" and that the move-in checklist was not an agreement to make repairs.

Prior to the date True moved into the apartment, Christine Plummer, Fath's property manager, testified that she requested that maintenance supervisor Robert Simpson inspect the loose railing. Simpson testified that he repaired a loose spindle.

After True, Habermehl and their child moved into the apartment, the couple noticed that the balcony railing remained loose. To prevent anyone from leaning over the rail, True testified that he placed a grill in front of the right side of the loose railing and told guests to "watch out for the railing." Habermehl also knew the railing was loose. She testified that True knew there were screws missing and there was no reason that True should have believed it was repaired. The work orders submitted into the record by Fath revealed that since moving into the apartment in May and prior to True's fall, several repair requests had been made by True and Habermehl but there were no complaints regarding the railing.

True could not recall the precise date he fell but testified that prior to the fall, he had been grilling and had eaten dinner. He stated that he had one alcoholic drink and denied being intoxicated. True has little recollection of the events surrounding his fall, and only remembered putting his hand on the railing and that it collapsed.

True's medical records indicate that he arrived at St. Luke Hospital on the morning of July 27, 2008, where he received medical treatment. The records state that True's condition was difficult to assess because he was intoxicated. He was transferred to another hospital where, again, a notation was entered that True was intoxicated and that True reported to his attending physicians that he was drinking and fell from his balcony. After treating physicians determined that True had become sober, and that he did not suffer any significant injuries, he was released.

Immediately after the fall, neither True nor Habermehl advised Fath that True had fallen or that the balcony railing was missing. However, sometime later, Plummer observed that the balcony railing had been removed. Shane Johnson, a maintenance person, was sent to the apartment where he discovered the removed section of the railing leaning against another section. He testified that it was severely damaged and that the only cause of the damage could be extremely hard kicks to the railing. Following the inspection, on August 7, 2008, True was issued a letter advising him of Fath's policy against removing balcony railings and was assessed a fee for the repair and reinstallation of the railing. Sometime between July 20 and July 23, 2009, Johnson wrote a report stating that he had observed a lady at True's apartment jerking the balcony spindles.

On July 21, 2009, True filed his complaint against Fath. Soon thereafter, Fath received a work order to repair loose screws on the balcony and the repairs were completed on July 24, 2009.

Following discovery, Fath filed a motion for summary judgment alleging that as a matter of law, it had no duty to repair the railing. The circuit court agreed but concluded that there was an issue of fact as to whether Fath undertook the duty to repair and did so negligently.

Fath renewed its motion for summary judgment addressing the negligent repair claim. It pointed out that True and Habermehl testified that True fell because of missing screws in the railing, but the only repair to the balcony railing was a tightened spindle before the couple moved into the apartment. It emphasized that True and Habermehl testified that prior to True's fall, they knew the balcony railing was loose and had not been repaired. After a review of the record, the circuit court granted Fath's motion for summary judgment and dismissed the action.

We review a summary judgment *de novo* and in accordance with well-established standards:

The standard of review on appeal when a trial court grants a motion for summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present at least some affirmative evidence showing that there is a genuine issue of material fact for trial. The trial court must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists.

*Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001) (internal quotations, footnotes and citations omitted).

■ True contends that there are material issues of fact that precluded summary judgment on his negligent repair claim and that the question of whether a condition is open and obvious is an issue of fact for the jury. Consideration of the issues necessarily requires a review of a landlord's liability to a tenant for personal injuries caused by a hazard on the premises occupied by a tenant.

In *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188 (Ky. App.2006), the Court considered the liabili-

ty of a landlord to a tenant for personal injuries sustained. Although the lease did not specifically require the landlord to maintain the premises, it stated that the landlord would "make necessary repairs with reasonable promptness." *Id.* at 189. After moving into the apartment, the tenant noticed an oily substance on the stairwell steps and discovered that the stairwell handrail was loose. After several requests to the landlord to repair the handrail were ignored, the tenant was injured when she grabbed the handrail and it pulled from the wall. The Court recited the general law applicable:

> In the absence of a special agreement to do so, made when the contract is entered into, there is no obligation upon the landlord to repair the leased premises. *Miles v. Shauntee,* 664 S.W.2d 512, 518 (Ky.1983). Likewise, a landlord will not be liable for injuries caused by defects in the leased premises unless the condition is unknown to the tenant and not discoverable through reasonable inspection. *Milby v. Mears,* 580 S.W.2d 724, 728 (Ky.App.1979), citing *Parson v. Whitlow,* 453 S.W.2d 270 (Ky.1970); *Carver v. Howard,* 280 S.W.2d 708 (Ky. 1955); *Larkin v. Baker,* 308 Ky. 364, 214 S.W.2d 379 (1948); *Consolidation Coal Co. v. Zarirs,* 222 Ky. 238, 300 S.W. 615 (1927); and *Speckman v. Schuster,* 183 Ky. 326, 209 S.W. 372 (1919).

*Id.* at 190. The tenant attempted to avoid application of the general rules because the landlord agreed in the lease to "make necessary repairs with reasonable promptness." Again, the Court reaffirmed the ancient common law:

> [I]n *Spinks v. Asp,* 192 Ky. 550, 234 S.W. 14 (1921), the former Court of Appeals held that a landlord is not liable for injuries caused by breach of a covenant to make repairs to a leased premises. Rather, the remedy for breach of an agreement to repair is the cost of repair. *Id.* at 16.

Curiously, *Spinks* has never been cited in a published Kentucky case since it was rendered in 1921[. . . .] However, we note that *Spinks* relies on established Kentucky precedent holding that a landlord is not liable for personal injuries growing out of the failure to repair. As in any other contract, the breach of a repair agreement does not extend the landlord's liability beyond damages outside of the reasonable contemplation of the parties. *Dice's Administrator v. Zweigart's Administrator,* 161 Ky. 646, 171 S.W. 195 (1914). This holding remains a generally accepted principle for recovering damages arising from a breach of contract. *See University of Louisville v. RAM Engineering & Construction, Inc.,* 199 S.W.3d 746, 748 (Ky. App.2005).

*Id.*

The same reasoning was applied in *Miller v. Cundiff,* 245 S.W.3d 786 (Ky.App. 2007), where a loose carpet caused a tenant's fall in her apartment. Recovery was denied against the landlord because the tenant was aware of the carpet's condition when she initially walked through the apartment and at the time of her fall. The Court not only reaffirmed the law as recited in *Pinkston* but also rejected the contention that the Uniform Residential Landlord Tenant Act (URLTA) abrogated the common law. The Court reasoned that "the URLTA was intended to supplement, not replace the common law." *Id.* at 789. Additionally, the Court pointed out that Kentucky has not adopted the URLTA on a statewide basis and a piecemeal abrogation of the common law would violate the constitutional provisions against local or special legislation. *Id.*

Confronted with the established precedent, True contends that this is a claim for

negligent repair and, therefore, it does not apply. In *Mahan–Jellico Coal Co. v. Dulling*, 282 Ky. 698, 139 S.W.2d 749 (1940), the Court held that although a landlord had no duty to repair steps leading to the tenant's doorway, it would not be absolved from liability when its negligent repairs were the proximate cause of the tenant's injuries. The Court concluded that under the circumstances, the rule that the tenant takes the premises "as is" did not apply. It stated:

> The general rule is that the tenant takes the premises as he finds them, and, in the absence of a contract imposing upon the landlord the duty to make repairs or improvements, he is under no implied obligation to do so. But notwithstanding this, if the landlord undertakes to make improvements or repairs on a leased building, and he makes them in such a negligent and careless manner as to injure the tenant, the tenant may recover the damages he sustains by reason of this negligence or carelessness[.]

*Id.* at 751–752. The same view is expressed in the Restatement (Second) of Property: Landlord and Tenant, § 17.7 (1977):

> A landlord who, by purporting to make repairs on the leased property while it is in the possession of his tenant, or by the negligent manner in which he makes the repairs, has, as the tenant neither knows nor should know, made the leased property more dangerous for use or given it a deceptive appearance of safety, is subject to liability for physical harm caused by the condition to the tenant or to others upon the leased property with the consent of the tenant or subtenant.

Contrary to True's assertion, the circuit court did not ignore the law applicable to negligent repairs. Rather, the circuit court carefully considered the undisputed facts and correctly emphasized that a negligent repair claim is premised on the tenant's reliance that a defect has been remedied. Recovery is permitted only if a repair resulted in an increased danger that was unknown to the tenant or if the negligent repair gave the deceptive appearance of safety. *Id.* In this case, the undisputed facts are to the contrary.

True and Habermehl testified that they were aware that the railing was loose because screws were missing. They further testified that after they moved in but prior to the fall, Fath had not repaired the railing. Thus, this is not a negligent repair claim. The applicable law is that a tenant takes the premises in "as is" condition and the landlord is only liable for injuries caused by defects unknown to the tenant and not discoverable through reasonable inspection.

Nevertheless, True contends that this Court must remand the case for consideration of the Kentucky Supreme Court's holding in *McIntosh*, rendered the same day as the circuit court's summary judgment. In *McIntosh*, the Supreme Court modified the open and obvious doctrine so that it is no longer an absolute bar to recovery from a landowner. Instead, the Court adopted the modern trend expressed in the Restatement (Second) of Torts § 343A(1) (1965), and its focus on foreseeability. The Court explained the limited exception:

> The lower courts should not merely label a danger as "obvious" and then deny recovery. Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury, he can be held liable. Thus, this Court rejects the minority position, which absolves, *ipso*

*facto,* land possessors from liability when a court labels the danger open and obvious.

However, this view also alters the position of the person injured by an open and obvious danger to the extent that only under extremely rare circumstances could a plaintiff avoid some share of the fault under comparative negligence. While "open and obvious danger" is no longer a complete defense under the Restatement, it is nonetheless a heightened type of danger which places a higher duty on the plaintiff to look out for his own safety. Such a condition, being open and obvious, should usually be noticed by a plaintiff who is paying reasonable attention. Yet the plaintiff is not completely without a defense to this: there could be foreseeable distraction, or the intervention of a third party pushing the plaintiff into the danger, for example. Even in such situations, a jury could still reasonably find some degree of fault by the plaintiff, depending on the facts.

*Id.* at 392.

Since the Court's pronouncement, this Court has had occasion to discuss its application. In *Lucas v. Gateway Community Services Organization, Inc.,* 343 S.W.3d 341 (Ky.App.2011), it was stressed that there must be a reasonably foreseeable distraction that caused the plaintiff to fail to discover an obvious condition, forget its existence, or fail to protect against the danger. *Id.* at 346.

There is no evidence that True was distracted from his "duty to act reasonably to ensure [his] own safety, heightened by [his] familiarity with the location and the arguably open and obvious nature of the danger." *McIntosh,* 319 S.W.3d. at 395. He was aware of the loose railing and the obvious danger it presented. His focus should have remained on the potential dan-ger and, consequently, the exceptional circumstances described in *McIntosh* do not apply.

True points out that there are six disputed facts that can only be resolved by a jury: (1) whether he was intoxicated when he fell; (2) whether he fell from the balcony or dismantled it himself; (3) whether the landlord agreed to make repairs; (4) whether True or Habermehl informed Fath that the balcony needed repair; (5) the nature of the railing's defect; and (6) whether Fath retained control over the premises.

Under our summary judgment standard, disputed facts warrant a jury trial only when material. *Lewis,* 56 S.W.3d at 436. The initial five disputed facts are immaterial because the common law we have recited precludes recovery.

Finally, True suggests that there is a fact issue regarding whether Fath retained control over the premises. He cites *Carver v. Howard,* 280 S.W.2d 708, 711 (Ky. 1955), wherein the general rule is stated: "[T]he landlord must exercise ordinary care to keep in a reasonably safe condition the premises reserved for common use of his tenants." Although the lease placed certain restrictions on the activities and use of the apartment, the leased apartment space was not open for the common use of all tenants and, therefore, the control retained by Fath is immaterial.

Based on the foregoing, the summary judgment of the Kenton Circuit Court is affirmed.

ALL CONCUR.