Christopher JOINER, Charity Joiner, and Logan Joiner, Appellants

v.

TRAN & P PROPERTIES, LLC; and Bailey Property Management, LLC, Appellees

NO. 2015-CA-001794-MR

Court of Appeals of Kentucky.

JULY 21, 2017; 10:00 A.M.

---

BRIEFS FOR APPELLANTS: Theodore W. Walton, Louisville, Kentucky.

BRIEF FOR APPELLEE, BAILEY PROPERTY MANAGEMENT LLC: David A. Shearer, Jr., Jason E. Abeln, Fort Mitchell, Kentucky.

BRIEF FOR APPELLEE, TRAN & P PROPERTIES LLC: Dennis J. Stilger, Louisville, Kentucky.

BEFORE: J. LAMBERT, NICKELL, AND TAYLOR, JUDGES.

## OPINION

LAMBERT, J., JUDGE:

Christopher Joiner (Joiner), Charity Joiner, and Logan Joiner (the Joiners) have appealed from the Jefferson Circuit Court's order granting partial summary judgment, made final and appealable by a

subsequent agreed order of partial dismissal. They seek review of the circuit court's dismissal of their action seeking damages for personal injury, landlord-tenant law violations, and violation of the consumer protection act. Finding no error, we affirm.

Joiner is the natural parent of Charity and Logan, who are both minors. On July 16, 2012, Joiner signed a one-year lease agreement to rent property at 1109 Reutlinger Avenue in Louisville, Kentucky. Tran & P Properties LLC owned the property and was responsible for maintaining the property in a safe and habitable condition, and Bailey Property Management LLC was the rental agent for the property and was responsible for renting and maintaining the property. The lease term began on August 1, 2012, and ended July 31, 2013. The Joiners had housing benefits through Louisville Metro Shelter Plus Care (Shelter Plus). The terms of the lease provided that the amended amount of monthly rent was $885.00; Joiner was to pay $34.00 and Shelter Plus was to pay the remaining balance. However, Tran & P Properties and Bailey Property required Joiner to pay $149.00 per month to make up for the difference between the original rental price of $1,000.00 and the amount Shelter Plus agreed to pay. After moving into the property, the Joiners began to suffer from respiratory conditions. After they discovered mold and leaking water in the property, Joiner notified Tran & P Properties and Bailey Property of the need for repair and remediation. In October 2016, a contractor reported a black mold issue which needed to be addressed through remediation and replacement of materials in those areas affected by the mold. The Joiners alleged that Tran & P Properties and Bailey Property failed to remediate the mold despite requests to do

so, and the Joiners continued to have health problems. Environmental testing in March 2013 identified the presence of black mold. Due to their financial situation, the Joiners could not find another place to live, and in late Spring 2013, Joiner was notified by Shelter Plus that he was losing his housing assistance because he had been paying the landlord an amount in excess of the lease amount.

As a result of these allegations, the Joiners filed a verified complaint with the Jefferson Circuit Court on September 24, 2013, seeking damages related to mold exposure and the rent amount charged. They alleged causes of action for violations of the Uniform Residential Landlord and Tenant Act (URLTA), Kentucky Revised Statutes (KRS) 383.505 *et seq.*; negligence; intentional infliction of emotional distress (IIED) and outrage; breach of contract; fraud and misrepresentation; and a violation of the Kentucky Consumer Protection Act (KCPA), KRS 367.170 *et seq.* The Joiners sought compensatory and punitive damages as well as a trial by jury.

Bailey Property filed an answer in which it asserted that the complaint failed to state a claim upon which relief could be granted and that it was barred by waiver, laches, estoppel, contributory negligence, and comparative negligence. After the Joiners filed a motion for a default judgment against it, Tran & P Properties moved for and received permission to file a late answer including the same defenses. The court referred the case to the Master Commissioner for review and recommendation in November 2013, which was not successful. Discovery proceeded, and the court set the matter for a jury trial in late 2015.

Prior to the trial, the defendants filed motions for summary judgment.[1] They ex-

---

1. Tran & P Properties adopted the motion and memorandum filed by Bailey Property.

plained that the original Shelter Plus lease signed in July 2012 required Joiner to sign a separate lease with Bailey Property and established that the rent for the property was $1,000.00 per month. One month later, Shelter Plus attempted to modify the terms of the lease to reduce the total rent to $885.00 per month and to require the Joiners to pay $34.00 of that amount. Neither Joiner nor Bailey Property signed the modified Shelter Plus lease. Pursuant to the terms of the lease Joiner had entered into with Bailey Property on August 1, 2012, which was to run through July 31, 2013, Shelter Plus was to pay $885.00 and Joiner was to pay $115.00 per month. Joiner received notification of the change in the rental amount from Shelter Plus after he had moved his family into the residence, and Joiner told Bailey Property he would continue to pay his $115.00 portion. When Joiner informed his caseworker that he had been overpaying his portion of the rent, he was told he had breached the Shelter Plus lease and would be dismissed from the rental program. Both Shelter Plus and Bailey stopped paying rent, and the Joiners were evicted on August 13, 2013, two weeks after the term of the lease had expired.

The memorandum went on to describe the mold issues in the house due to a leak in the roof, which were all corrected by March 2013. After reporting the mold, Bailey Property offered to let Joiner break the lease, but Joiner did not make any efforts to find a different residence.

The defendants argued that the Shelter Plus lease was unenforceable because there was no meeting of the minds related to the rental amount and the existence of a unilateral mistake of fact regarding that amount, and that the Bailey Property lease was also unenforceable due to a mutual mistake of fact as to the rent amount. They went on to argue that the Joiners

failed to produce any evidence of injury or damages due to mold; that it had not violated the URLTA or committed any negligence by failing to maintain the premises, noting that the remedy for breach of a landlord's duty was the cost of the repair, which Bailey Property paid for; that the Joiners did not specify any grounds giving rise to their IIED and outrage claims; did not commit fraud or misrepresentation because the leases reflected the amount of $1,000.00 as rent; and that they did not violate the KCPA in relation to either the mold or the rent amount. In a supplement, Bailey Property argued that the KCPA did not provide the Joiners with a cause of action because that Act does not apply to single real estate transactions.

Attached to the memorandum were several items, including the lease agreements at issue. The Shelter Plus leases, signed on July 16, 2012, by Jessica Cowles as the agent of Bailey Property and Joiner, showed a lease term running from August 1, 2012, through July 31, 2013. The contract rent amount of $1,000.00 was marked out and $885.00 was substituted. The lease provided that Shelter Plus would pay $851.00 and that Joiner would pay $34.00 each month as rent. It also required Joiner to sign a lease with Bailey Property. Joiner and Cowles signed a Housing Assistance Payment Contract the same day. Again, the amount of $1,000.00 was crossed out and $885.00 was substituted. The Bailey Property lease was dated August 1, 2012, and signed by Cowles and Joiner on August 6, 2012. The rent amount was listed as $1,000.00, with Shelter Plus paying $885.00 and Joiner paying $115.00 per month.

Portions of depositions taken during the course of discovery were also attached to the memorandum. Joiner admitted to signing the leases and contract. Before they moved in, Cowles told Joiner that the

monthly rental amount was $1,000.00 and what portion he would have to pay, including the extra $115.00 per month. He did not discover that his portion of the rent was supposed to be $34.00 until later. He informed his caseworker that he had been paying a different amount to see if he could get a refund. His caseworker told him that he had broken the contract by paying more than $34.00 per month, and the Joiners lost their Shelter Plus funding.

Joiner also testified about the leak in the closet of one of the children's bedrooms. He said he first noticed the moisture on October 16, 2012, and he called Cowles, who told him she would tell maintenance. When no one came to fix the problem, he called back. Three days after his first call, he saw a repairman on the roof who told him he had taken care of the problem. But the roof continued to leak. The leak was finally corrected in March 2013. Joiner testified that Bailey Property told him he could move out at any time, but he did not have anywhere else to go. Bailey Property did not offer to help him move into another property. The Joiners were eventually evicted from the property in August 2013. He and Shelter Plus had stopped paying rent right before the Joiners were evicted.

Joiner admitted that he had not suffered any health problems due to the mold exposure, although he later stated that he had. He was not diagnosed with any type of mold-related condition. He also believed his children had some respiratory problems, but they had not treated with any physicians or in the hospital. His daughter had to take antibiotics for two bronchial infections. The physician told Joiner to move out of the house due to the mold.

Jessica Cowles testified by deposition about the property. She worked for Bailey Property, and the property the Joiners rented was owned by Anthony Tran of Tran & P Properties. She discussed the amount of rent set for the property, which she said was $1,000.00 per month. The paperwork she completed and turned in to Shelter Plus included that amount. She said "at the last minute" Shelter Plus said the rent could not be over a certain amount and it would not pay more than a certain dollar figure. Because Joiner was desperate for a place to live, Cowles said he offered to pay the difference between what Shelter Plus would pay and the lease amount. The amount of rent Shelter Plus would pay was changed after Cowles and Joiner had signed the lease documents. Cowles went on to testify that the property had been inspected twice before the Joiners moved in, and it was also tested for lead-based paint by Shelter Plus. Cowles did not remember if Joiner had made any complaints about water or mold after March 2013. She said the Joiners were evicted after he was thrown out of the Shelter Plus program and he and Shelter Plus stopped paying any rent. Cowles confirmed that she had offered to move the Joiners to another property Bailey Property managed and to break his lease and give him back his full deposit.

The Joiners objected to the motion for summary judgment. He provided his version of the change in the amount of rent Shelter Plus would pay, and he said that Bailey Property asked him to make up the difference between what Shelter Plus would pay and the original amount of rent owed under the lease. Joiner did not know until sometime after he had moved in that his portion of the rent was supposed to be $34.00.[2] He paid Bailey Property $115.00 per month for the next ten months in addition to the $34.00 in rent designated

---

2. An August 17, 2012, letter from Shelter Plus confirmed that the monthly rent totaled $885.00, that Shelter Plus would pay $851.00, and that Joiner would pay $34.00.

by Shelter Plus. Joiner went to on discuss the water and mold issue in his daughter's bedroom. Anthony Tran did not attempt to fix the problem until December 2012, and it was not until March 2013 that the mold problem was remediated. The Joiners ultimately lost their benefits from Shelter Plus by paying more than $34.00 per month in violation of the contract[3] and were later evicted from the property. After staying with a friend for a few weeks, the children went to live with relatives, and Joiner lived in various places until he obtained an apartment a year later.

The Joiners argued that the defendants were not entitled to a summary judgment and that they had sufficiently supported their claims and created a triable question of fact with relation to the mold claim. In a supplemental filing, the Joiners relied upon the medical opinion of Dr. Bruce Davis, who testified that he had treated the children for mold exposure and that the mold contributed to and exacerbated their respiratory problems. With this evidence, the Joiners argued that they established medical causation to permit the case to survive the motion for summary judgment. The also disagreed with Bailey Property's KCPA argument and stated that whether KRS 367.220 applied was an open question.

On November 13, 2015, the circuit court entered an opinion and order granting a partial summary judgment to the defendants on all claims except the claim for breach of contract. The court stated as follows:

The plaintiff's negligence and personal injury claims under the URLTA and the common law must be dismissed because the plaintiffs were aware of the existence of the mold and the defendants'

duty was therefore limited to repairing the condition, a duty the defendants fulfilled. *Miller v. Cundiff*, 245 S.W.3d 786, 789 (Ky. App. 2007). The Court also finds as a matter of law that the plaintiffs' claim of outrage fails because they describe no facts in their response brief that rises to conduct so "outrageous and intolerable ... that it offends against the generally accepted standards of decency and morality." *Humana of Kentucky v. Seitz*, 796 S.W.2d 1, 2 (Ky. 1990) quoting, in part, *Restatement (2d) Torts* § 46 (1965), comment (d). *See, also, Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 789-90 (Ky. 2004), and cases cited therein that provide fact examples contained in cases where the tort of outrage was dismissed or otherwise did not survive. The plaintiffs' fraud and misrepresentation claims must fail because there is no proof that the defendants misrepresented any material fact at the time the parties signed the leases. *UPS v. Rickert*, 996 S.W.2d 464, 466 (Ky. 1999). Finally, the plaintiffs' Kentucky Consumer Protection Act claim under KRS 367.170 must be dismissed because the KCPA does not apply to single real estate transactions. *Craig v. Keene*, 32 S.W.3d 90, 91 (Ky. App. 2000).

The court determined that a factual issue existed as to whether the contract was invalid due to a mistake of fact or lack of meeting of the minds of the parties in relation to terms allowing Shelter Plus to set the rent after a lease is signed and to prevent landlords from charging more rent than set by Shelter Plus. Rather than proceed to trial, the parties agreed to dismiss the plaintiffs' breach of contract claim without prejudice, making the order granting partial summary judgment final and

---

**3.** Pursuant to a May 20, 2013, letter, the Joiners were terminated from the Shelter Plus program as of June 30, 2013, when his hous-

ing assistance payments would also terminate.

appealable. This appeal from the partial summary judgment now follows.[4]

Our standard of review in an appeal from a summary judgment is well-settled in the Commonwealth. "The standard of review on appeal when a trial court grants a motion for summary judgment is 'whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.'" *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001), citing *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); *Palmer v. International Ass'n of Machinists & Aerospace Workers*, 882 S.W.2d 117, 120 (Ky. 1994); CR 56.03. "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis*, 56 S.W.3d at 436, citing *Scifres*, 916 S.W.2d at 781; *Estate of Wheeler v. Veal Realtors and Auctioneers, Inc.*, 997 S.W.2d 497, 498 (Ky. App. 1999); *Morton v. Bank of the Bluegrass and Trust Co.*, 18 S.W.3d 353, 358 (Ky. App. 1999). The parties appear to agree that there are no disputed issues of material fact, and therefore we shall review the circuit court's legal rulings on the Joiners' various claims *de novo.*

 The Joiners' first argument addresses whether the circuit court properly granted summary judgment related to their claim of negligence. In order to establish a common law negligence claim, a plaintiff must establish the following:

A common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4)

legal causation between the defendant's breach and the plaintiff's injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003) (*citing Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992); *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001)). The standard of care applicable to a common-law negligence action is that of ordinary care—that is, "such care as a reasonably prudent person would exercise under the circumstances." *Slusher v. Brown*, 323 S.W.2d 870, 872 (Ky. 1959).

*Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012).

 Here, the circuit court determined that because the Joiners were aware of the mold, the defendants' duty was limited to repairing the condition, which had been done. The circuit court relied upon this Court's opinion in *Miller v. Cundiff*, 245 S.W.3d 786, 789 (Ky. App. 2007), to support its position: "At common law, the breach of a repair agreement does not extend the landlord's liability beyond damages outside of the reasonable contemplation of the parties. . . . [T]he remedy for breach of a duty to repair is limited to the cost of repair." (Internal citations omitted.) This Court extensively considered the same issue in *True v. Fath Bluegrass Manor Apartment*, 358 S.W.3d 23, 25–26 (Ky. App. 2011), in which we specifically considered a landlord's liability to his tenant for personal injuries incurred on the rented property:

In *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188 (Ky. App. 2006), the Court considered the liability of a landlord to a tenant for personal injuries sustained. Although

---

4. The Joiners have not sought review of the circuit court's dismissal of their IIED and outrage claims.

the lease did not specifically require the landlord to maintain the premises, it stated that the landlord would "make necessary repairs with reasonable promptness." *Id.* at 189. After moving into the apartment, the tenant noticed an oily substance on the stairwell steps and discovered that the stairwell handrail was loose. After several requests to the landlord to repair the handrail were ignored, the tenant was injured when she grabbed the handrail and it pulled from the wall. The Court recited the general law applicable:

> In the absence of a special agreement to do so, made when the contract is entered into, there is no obligation upon the landlord to repair the leased premises. *Miles v. Shauntee*, 664 S.W.2d 512, 518 (Ky. 1983). Likewise, a landlord will not be liable for injuries caused by defects in the leased premises unless· the condition is unknown to the tenant and not discoverable through reasonable inspection. *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky. App. 1979), citing *Parson v. Whitlow*, 453 S.W.2d 270 (Ky. 1970); *Carver v. Howard*, 280 S.W.2d 708 (Ky. 1955); *Larkin v. Baker*, 308 Ky. 364, 214 S.W.2d 379 (1948); *Consolidation Coal Co. v. Zarirs*, 222 Ky. 238, 300 S.W. 615 (1927); and *Speckman v. Schuster*, 183 Ky. 326, 209 S.W. 372 (1919).

*Id.* at 190. The tenant attempted to avoid application of the general rules because the landlord agreed in the lease to "make necessary repairs with reasonable promptness." Again, the Court reaffirmed the ancient common law:

> [I]n *Spinks v. Asp*, 192 Ky. 550, 234 S.W. 14 (1921), the former Court of Appeals held that a landlord is not liable for injuries caused by breach of a covenant to make repairs to a leased premises. Rather, the remedy for breach of an agreement to repair is the cost of repair. *Id.* at 16.

> Curiously, *Spinks* has never been cited in a published Kentucky case since it was rendered in 1921[. . . .] However, we note that *Spinks* relies on established Kentucky precedent holding that a landlord is not liable for personal injuries growing out of the failure to repair. As in any other contract, the breach of a repair agreement does not extend the landlord's liability beyond damages outside of the reasonable contemplation of the parties. *Dice's Administrator v. Zweigart's Administrator*, 161 Ky. 646, 171 S.W. 195 (1914). This holding remains a generally accepted principle for recovering damages arising from a breach of contract. *See University of Louisville v. RAM Engineering & Construction, Inc.*, 199 S.W.3d 746, 748 (Ky. App. 2005).

*Id.*

The same reasoning was applied in *Miller v. Cundiff*, 245 S.W.3d 786 (Ky. App. 2007), where a loose carpet caused a tenant's fall in her apartment. Recovery was denied against the landlord because the tenant was aware of the carpet's condition when she initially walked through the apartment and at the time of her fall. The Court not only reaffirmed the law as recited in *Pinkston* but also rejected the contention that the Uniform Residential Landlord Tenant Act (URLTA) abrogated the common law. The Court reasoned that "the URLTA was intended to supplement, not replace the common law." *Id.* at 789. Additionally, the Court pointed out that Kentucky has not adopted the URLTA on a statewide basis and a piecemeal abrogation of the common law would violate the constitutional provisions against local or special legislation. *Id.*

Based upon this precedent, we must agree with the appellees that the circuit court properly granted summary judgment on this claim. Kentucky law provides that the remedy for breach of an agreement to repair is the cost of the repair. Because the Joiners did not pay for the repairs, they cannot assert a claim for damages.

We have considered the Joiners' citation to *Warren v. Winkle*, 400 S.W.3d 755, 762 (Ky. App. 2013), and find it to be distinguishable from the case before us on review. In *Warren*, this Court distinguished both *Pinkston, supra*, and *Miller, supra*, holding that "[b]oth cases involved a defect inside the rented premises in an area under the tenant's exclusive control and the landlord's duty to repair. The crucial distinction is that the Winkles retained exclusive control of the roof and the area between it and the ceiling. This is an action for negligence, not breach of contract or an action under the URLTA." *Warren*, 400 S.W.3d at 762. Here, the defect involved the alleged mold in the bedroom closet.

▆▆▆ Next, the Joiners argue that the appellees violated the Louisville Shelter Code and were negligent *per se*. Therefore, they were entitled to damages pursuant to KRS 446.070 ("A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."). This argument fails for two reasons. First, KRS 446.070 addresses violations of a statute, not an ordinance. "Ordinances are held not to be 'statutes'; and, therefore, violation of an ordinance also fails to state a cause of action under KRS 446.070." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534–35 (Ky. 2011) (footnote omitted). And second, the Joiners failed to raise this argument before the circuit court and are precluded from raising this for the first time on appeal. "[S]pecific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal." *Fischer v. Fischer*, 348 S.W.3d 582, 588 (Ky. 2011).

Next, the Joiners contend that Kentucky precedent unduly restricts Kentucky's URLTA and essentially request that this Court overturn our decision in *Miller v. Cundiff, supra*. As noted by both appellees, the Joiners failed to avail themselves of either KRS 383.625 [5] or 383.635 [6] to terminate the lease or repair the damage or to take advantage of offers to break the lease. The Joiners argue that they did not

---

**5.** "(1) Except as provided in KRS 383.505 to 383.715, if there is a material noncompliance by the landlord with the rental agreement or a noncompliance with KRS 383.595 materially affecting health and safety, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach and that the rental agreement will terminate upon a date not less than thirty (30) days after receipt of the notice if the breach is not remedied in fourteen (14) days, and the rental agreement shall terminate as provided in the notice subject to the following …"

**6.** "(1) If the landlord willfully and materially fails to comply with the rental agreement or fails to comply with KRS 383.595 and such noncompliance materially affects health and safety and the reasonable cost of compliance is less than one hundred dollars ($100), or an amount equal to one-half (1/2) of the monthly rent, whichever amount is greater, the tenant may notify the landlord of his intention to correct the condition at the landlord's expense. If the landlord willfully fails to comply within fourteen (14) days after being notified by the tenant in writing or as promptly as conditions require in case of emergency, the tenant may cause the work to be done in a workmanlike manner and, after submitting to the landlord an itemized statement for the work actually done and for which the tenant has paid in full, deduct from his rent the actual and reasonable cost or the fair and reasonable value of the work, not exceeding the amount specified in this subsection."

have the means, either physically or financially, to make the repairs to the house, meaning that the Act unfairly applies to their family. We decline to revisit this established precedent. Because the Joiners' only remedy in this case is the cost of the repairs, they cannot establish any damages.

Next, the Joiners argue that the circuit court erred in dismissing their fraud claim. In *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999), the Supreme Court of Kentucky set forth the elements a plaintiff must prove to establish a fraud claim:

> In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. *Wahba v. Don Corlett Motors, Inc.*, Ky. App., 573 S.W.2d 357, 359 (1978).

As to the argument that the appellees acted fraudulently with regard to the repairs, we must agree that the Joiners failed to raise this claim before the circuit court and are therefore precluded from doing so on appeal. *See Fischer, supra.*

■ As to the claim of fraudulent misrepresentation regarding the lease documents, we also agree with the appellees that the Joiners failed to establish the existence of a false representation regarding the amount of the monthly rent payment or that they were injured as a result. The documents all show that the rent amount was $1,000.00, notwithstanding Shelter Plus's alteration of the rent amount after the documents were signed. The Joiners' claim that they lost their housing as a result does not have any merit because they were not evicted until after the one-year lease period had ended.

■ For their next argument, the Joiners contend that the appellees are liable for violating the KCPA. This argument must fail because the Act does not apply to individual real estate transactions. *See* KRS 367.220(1) ("Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action...."); *Craig v. Keene*, 32 S.W.3d 90, 91 (Ky. App. 2000) ("[W]e do not believe that the Kentucky Consumer Protection Act applies to real estate transactions by an individual homeowner.").

In order to escape this limitation in the KCPA, the Joiners argue that KRS 367.220 should apply to landlord-tenant transactions. But as Judge Combs stated in her concurring opinion in *Craig v. Keene, supra,*

> It is anomalous that the jury found a violation of the Kentucky Consumer Protection Act, that the Act provides for damages in case of a violation, and that we have concluded at this late stage of the litigation that the Act does not apply to real estate transactions. It is a regrettable outcome resulting in an injury without a remedy, clearly calling for the attention of the General Assembly to fill this gap and to close this loophole by legislatively extending the protection of the Consumer Protection Act to real estate transactions.

32 S.W.3d at 92 (Combs, J., concurring).

Finally, with respect to their KCPA argument, we reject the Joiners' arguments that KRS 446.070 gives them a cause of action under the KCPA and that the appellees' failure to adequately address the

mold issue more quickly constituted unfair, false, misleading, or deceptive acts.

While this Court certainly sympathizes with the plight of the Joiner family in securing a stable home for all of them, the fact remains that legally they have failed to establish any of the causes of action alleged in their complaint.

For the foregoing reasons, the partial summary judgment of the Jefferson Circuit Court is affirmed.

NICKELL, JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN RESULT ONLY.