**WESTERN KENTUCKY COCA–COLA BOTTLING COMPANY, INC.,**
Appellant,

v.

**REVENUE CABINET, Commonwealth of Kentucky; and Kentucky Board of Tax Appeals, Appellees.**

No. 2000–CA–002883–MR.

Court of Appeals of Kentucky.

Dec. 21, 2001.

Discretionary Review Denied by Supreme Court Aug. 14, 2002.

John David Cole, Cole, Moore & Baker, Matthew P. Cook, Bowling Green, KY, for appellant.

Douglas M. Dowell, Revenue Cabinet, Commonwealth of Kentucky, Frankfort, KY, for appellee.

Before COMBS, HUDDLESTON and MILLER, Judges.

*OPINION*

HUDDLESTON, Judge.

With Chief Justice Marshall's famous declaration "the power to tax involves the power to destroy," the United States Su-

preme Court established the doctrine of federal immunity from state taxation, a principle founded on the Supremacy Clause of the United States Constitution.[1] By voluntarily waiving immunity from state taxation in certain instances, the Buck Act[2] narrowed the application of this general principle while maintaining the protection afforded to instrumentalities of the United States. At the heart of the present controversy is the question of whether a military post exchange can properly be classified as an instrumentality and therefore qualify for the protection afforded by the Buck Act exception which preserves immunity from state taxation for instrumentalities of the federal government.

Western Kentucky Coca–Cola Bottling Company, Inc. appeals from a Franklin Circuit Court order which reversed a decision of the Kentucky Board of Tax Appeals and affirmed the assessment of sales tax in the amount of $175,323.29 plus interest by the Kentucky Revenue Cabinet. In so doing, the circuit court held that the sales in question were not sales at commissaries or post exchanges restricted to "authorized persons," and taxation was therefore not precluded by the exception. The taxes at issue were levied as the result of a contract between Western Kentucky Coca–Cola and the Army and Air Force Exchange Service (AAFES)[3] pursuant to which Western Kentucky Coca Cola sold canned soft drinks to the Exchange for resale from vending machines to military personnel and others permissibly at the Kentucky portion of the Fort Campbell military reservation. The secondary transactions conducted between the Exchange and authorized customers do not fall within our realm of concern. Determining the propriety of the assessment which prompted this appeal, that is, whether the Exchange can properly be categorized as an instrumentality of the United States within the meaning of the Buck Act, is the dispositive inquiry as the only relevant transaction is between Western Kentucky Coca–Cola and the Exchange.

The pertinent facts of this case are not in dispute. Western Kentucky Coca–Cola is a private corporation that sells soft drinks and the Exchange is a place on the military base which sells needed items at a reduced cost for the convenience of individuals authorized to make purchases. By its terms, the contract governed only the vending machine sales of soft drinks on the base. The vending machines were leased by the Exchange and Western Kentucky Coca–Cola retained a service charge for rental of the machines based solely on the quantity of soft drinks sold. Paragraph 6(b) of the subject contract provides that title to the soft drink inventory passes to the Exchange upon its placement in the vending machines. The Exchange as-

**1.** *United States v. New Mexico*, 455 U.S. 720, 730, 102 S.Ct. 1373, 1380, 71 L.Ed.2d 580, 589 (1982)(citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 431, 4 L.Ed. 579 (1819)).

**2.** 4 United States Code (U.S.C.) § 105–110.

**3.** The Army and Air Force Exchange Service (AAFES) is a joint command of the U.S. Army and U.S. Air Force under the jurisdiction of the Chief of Staff, U.S. Army and Chief of Staff, U.S. Air Force. AAFES is the entity embracing the activities, personnel, property, and nonappropriated funds through which exchange and motion picture services are provided within the Army and the Air Force. The Board of Directors, Army and Air Force Exchange Service (Board of Directors) is responsible to the Secretary of the Army and the Secretary of the Air Force, through the respective Chiefs of Staff, for directing the AAFES.... The Commander, AAFES is the executive agent for the Board of Directors, for the administration of AAFES. *Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co., Inc.*, 632 F.2d 680, 684 (7th Cir. 1980).

sumed product or money loss resulting from use of slugs, break-ins, external power failure and losses not attributable to the contractor (Western Kentucky Coca–Cola). Risk of loss resulting from mechanical defects, including but not limited to inventory spoilage, machines vending merchandise without coins being deposited and damage to products vended was assumed by Western Kentucky Coca–Cola.

Under the contract, the Exchange retained exclusive authority to determine where the machines were to be placed, which varieties of Coca–Cola products were to be sold and the price at which the sales were to be made. Western Kentucky Coca–Cola's duties included stocking, repairing, servicing, cleaning and maintaining the machines. The company was also liable for any income lost as a result of its failure to implement a price change in a timely manner. In addition, Western Kentucky Coca–Cola was responsible for the collection of monies from the vending machines which the company initially deposited at a bank located on the base. All monies removed from the machines remained the property of the Exchange which established the procedures for collection. Western Kentucky Coca–Cola was liable for loss of the receipts until they were turned over to an authorized Exchange employee and a proper receipt was obtained. There were no visible restrictions on or around the vending machines limiting who could purchase the soft drinks.

The sales tax originally assessed by the Cabinet was based on the gross proceeds Western Kentucky Coca–Cola removed from the vending machines during the period from March 1, 1991, through February 28, 1995. In response to this unfavorable ruling, Western Kentucky Coca–Cola appealed to the Board which held an evidentiary hearing on October 11, 1999. At the hearing, the company offered testimony indicating that entry to the base is restricted at all times and that the actual performance of the parties was consistent with the terms of the contract. On April 17, 2000, the Board set aside the assessment, noting that 103 Kentucky Administrative Regulations (KAR) 30:235(1) precludes the application of sales tax to receipts from sales made to instrumentalities of the federal government. In reversing the Cabinet, the Board properly focused on the transaction between Western Kentucky Coca–Cola and the Exchange, holding that it was improper to assess state sales or use taxes on the transactions between the company and the Exchange since the Exchange is a federal instrumentality and sales to it are immune from the imposition of state sales tax under Section 107 of the Buck Act.

Following the decision of the Board, the Cabinet petitioned for judicial review. In an order entered on December 4, 2000, the court reversed the determination of the Board and reinstated the assessment against Western Kentucky Coca–Cola. In so doing, the court held that the sales in question were not sales at commissaries or post exchanges restricted to "authorized persons," thereby rendering the exception inapplicable. Western Kentucky Coca–Cola then appealed to this Court.

When the outcome of a case turns on an issue of law, as in the instant matter, appellate review is *de novo*. There is no requirement that we grant any deference to the trial court where factual findings are not at issue.[4] A determination of an issue of law is also presented where the question is one of statutory

---

4. *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996) (citations omitted).

construction[5] or where the relevant facts are undisputed and the dispositive issue thereby becomes the legal effect of those facts.[6] As noted previously, whether the Exchange constitutes an instrumentality for present purposes is the legal question to be decided since resolution of this issue will necessarily determine the propriety of the assessment.

On October 9, 1940, the United States Congress adopted what is generally known as the Buck Resolution or the Buck Act which provides, in pertinent part, as follows:

> Sec. 105. State ... taxation affecting Federal areas; sales or use tax
>
> (a) No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.[7]

A limitation upon the application of Sec. 105(a) is contained in Sec. 107, the exception to the general rule:

> Sec. 107 Same; exception of United States, its instrumentalities, and authorized purchases therefrom

> (a) The provisions of sections 105 and 106 of this title shall not be deemed to authorize the levy or collection of any tax on or from the United States or any instrumentality thereof, or the levy or collection of any tax with respect to sale, purchase, storage, or use of tangible personal property sold by the United States or any instrumentality thereof to any authorized purchaser. (b) A person shall be deemed to be an authorized purchaser under this section only with respect to purchases which he is permitted to make from commissaries, ship's stores, or voluntary unincorporated organizations of personnel of any branch of the Armed Forces of the United States, under regulations promulgated by the departmental Secretary having jurisdiction over such branch.[8]

The United States Supreme Court has said that this section can only be read as an explicit congressional preservation of federal immunity from state sales taxes unconstitutional under the immunity doctrine.[9] More specifically, the Supreme Court has established that post exchanges and similar facilities such as the one at Fort Campbell are arms of the government which are essential for the performance of government functions and partake of whatever immunities are provided under the Constitution and federal statutes.[10]

■ At issue in *Standard Oil Co. v.*

---

**5.** *Interim Office v. Jewish Hosp. Healthcare,* Ky.App., 932 S.W.2d 388, 390 (1996).

**6.** *See Mill Street Church of Christ v. Hogan,* Ky.App., 785 S.W.2d 263, 266–267 (1990).

**7.** *Falls City Brewing Co., Inc. v. Reeves,* 40 F.Supp. 35 (W.D.Ky.1941).

**8.** 4 U.S.C. § 107.

**9.** *United States v. Mississippi Tax Comm'n,* 421 U.S. 599, 612, 95 S.Ct. 1872, 1880, 44 L.Ed.2d 404, 415 (1975).

**10.** *Id.,* 421 U.S. at 599, 95 S.Ct. at 1880, 44 L.Ed.2d at 415. *See also, Standard Oil Co. of California v. Johnson,* 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942).

*Johnson*[11] was the validity of a California statute imposing a fuel license tax on individuals who distributed fuel to post exchanges.[12] After reviewing the formation and development of exchanges, the Supreme Court resolved the issue as follows:

> From all of this, we conclude that post exchanges as now operated are arms of the Government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the Constitution and federal statutes. In concluding otherwise, the Supreme Court of California was in error.[13]

The legislative history of the Buck Act reflects that it was not designed to eliminate the existing exemption applicable to post exchanges on military reservations.[14] Debate on the Resolution as originally passed by the House of Representatives resulted in its amendment by the addition of Section 3.[15] This section contains the exemption and clearly indicates that it was added to meet the objections of the Army and Navy Departments and the Marine Corps that sales by post exchanges and commissaries to military personnel (but excluding such sales to civilians) should be exempt from state taxation.[16] The phrase "instrumentality" of the United States was used to achieve that result.

■■■ The AAFES has a unique purpose as compared to private enterprise.

Its mission is to "[p]rovide merchandise and services of necessity and convenience which are not furnished from appropriated funds to authorized patrons at uniformly low prices" and to "generate reasonable earnings to supplement appropriated funds for the support of Army and Air Force welfare and recreational programs."[17] Another feature which distinguishes AAFES from an ordinary commercial enterprise is the disposition of profits and dividends, namely because the "stockholders" are all the members of our military forces.[18]

Particularly noteworthy with respect to the current dispute is the degree to which exchange privileges are controlled. The AAFES is required to be selective about its customers. In addition to active duty personnel, certain others are permitted to be customers, including retired personnel, honorably discharged disabled veterans, specific members of reserve units, recipients of the Medal of Honor and their dependents.[19] Employees of the exchanges and other government civilian employees residing on military installations for the convenience of the government are also given limited privileges.[20] The above examples are not exclusive; numerous classifications are set forth in the joint regulations of the Army and Air Force.[21]

The following excerpt from one of many congressional reports concerning the AAFES illustrates the reasoning behind

11. *Supra*, n. 10.

12. *Champaign–Urbana News Agency, supra*, n. 3, at 690 (citation omitted).

13. *Id.*

14. *Falls City Brewing Co., supra*, n. 7, at 40.

15. *Id.*

16. *Id.*

17. *Champaign–Urbana News Agency, supra*, n. 3, at 684.

18. *Id.* at 685.

19. *Id.* at 684–685.

20. *Id.*

21. *Id.*

Congressional interest and characterization of AAFES:

> Nonappropriated fund activities of the Department of Defense occupy a unique position. They render a service vital to the morale of military personnel and their dependents. Nonappropriated funds are instrumentalities of the Federal Government and are entitled to the sovereign immunities and privileges of the United States as provided in the Constitution, statutes, treaties, and agreements with foreign governments. They also experience tangible benefits, such as tax relief.[22]

While some expenditures for the purpose of providing related services come by way of direct appropriations from Congress, a significant portion can be attributed to proceeds derived from the operation of post exchanges which inure to the benefit of the government, relieving it from additional appropriations to that extent.[23] Were it not for such operations, the government itself would be compelled to supply facilities. It stands to reason, therefore, that exchanges are undoubtedly an auxiliary agency or extension of the government and can easily be classified as an instrumentality of the United States within the accepted definition.

The decision in *Falls City Brewing Co. v. Reeves* provides persuasive guidance in the case before us. In that case, the United States District Court for the Western District of Kentucky faced a similar issue when presented with the question of whether the post exchange at Fort Knox was required to procure a license from the Commonwealth of Kentucky to sell malt beverages and comply with the provisions of the Kentucky statutes taxing and regulating sales of such beverages.[24] After noting the primary purposes and limited membership of post exchanges, the Court concluded that the military reservation of Fort Knox is under the exclusive jurisdiction of the United States, and the Commonwealth of Kentucky cannot levy a tax against property owned or privileges enjoyed within the reservation.[25] Specifically, the Court held that the sale of malt beverages by Falls City Brewing Company to the Post Exchange at Fort Knox for resale to authorized purchasers from that organization was not subject to taxation or regulation by the Commonwealth of Kentucky because the exchange is a federal instrumentality within the purview of the exemption clause of the Buck Resolution.[26]

In *United States v. New Mexico*,[27] the Supreme Court was confronted with the question of whether contractors conducting business with the federal government under an "advanced funding" procedure are taxable entities independent of the United States thereby permitting the state to tax the receipts of a vendor selling tangible property to the United States through the contractors. The Supreme Court concluded that the confusing nature of its precedents warranted a return to the underlying constitutional principle that a state may not, consistent with the Supremacy Clause, lay a tax directly upon the United States, but the Court also noted that the limits on the immunity doctrine had become as significant as the rule it-

---

22. *Id.* at 686.

23. *Falls City Brewing Co., supra,* n. 7, at 39–40.

24. *Id.* at 36.

25. *Id.* at 38.

26. *Id.* at 40.

27. *United States v. New Mexico, supra,* n. 1, at 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580, 581.

self.[28] The Supreme Court went on to state that immunity is not to be conferred when the tax simply has an effect on the United States, "or even because the Federal Government shoulders the entire economic burden of the levy." [29] Taken out of context, this statement is misleading since the Supreme Court continued by saying that the cases did leave room for immunity in one circumstance: "when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." [30] In determining that the gross income of the contractors was taxable, the Supreme Court deemed the fact that the federal property involved was being used for the Government's benefit irrelevant since the contractors remained distinct entities pursuing private ends and, therefore, had not become "instrumentalities" of the United States.[31]

■ This analysis is consistent with a finding that the Exchange is an instrumentality within the purview of the Buck Act exception. No third parties were involved in the transaction between Western Kentucky Coca–Cola and the Exchange. Most importantly, as evidenced by the preceding discussion regarding the origin, purposes and organization of post exchanges, the Fort Campbell Exchange is a classic example of the one circumstance where immunity is appropriate. Accordingly, the Commonwealth is without authority to tax the sale of canned soft drinks by Western Kentucky Coca–Cola to the Exchange for resale to authorized persons, just as the sale of malt beverages by Falls City Brewing for resale by the Fort Knox Exchange was not subject to taxation by the Commonwealth.

An attempt to separate AAFES from our military forces would require ignoring features which distinguish it from private enterprise and disregarding the long-established views of Congress, the Executive Branch and the judiciary. It is difficult to imagine an organization which is more intertwined with the federal government than the armed forces which protect it and the country it represents. Morale is at least as important to the effectiveness of the military as strict discipline, and the AAFES is an integral part of our military structure providing much needed services to military personnel worldwide. AAFES profits are used to supplement tax monies which are appropriated in order to preserve that morale.

In short, the Congress has addressed this issue. As our judicial role does not encompass legislating, we leave any change in the status of exchanges to Congress. No credible argument can be made that the Fort Campbell Exchange is not an instrumentality of the federal government. Sales to such an instrumentality are exempt from taxation under the terms of the Buck Act exception. Resolution of this dispositive issue dispenses with the need to address the additional arguments submitted for our consideration. Because the sales tax assessed against Western Kentucky Coca–Cola was based on sales to the Exchange which is an instrumentality of

28. *Id.* at 455 U.S. 733, 734, 102 S.Ct. at 1382–1383, 71 L.Ed.2d 580, 591–592.

29. *Id.*

30. *Id.*, 455 U.S. at 735, 102 S.Ct. at 1383, 71 L.Ed.2d at 592 (citations omitted).

31. *Id.*, 455 U.S. at 739–740, 102 S.Ct. at 1385, 71 L.Ed.2d at 595 (citations omitted).

the federal government, the assessment was by definition improper.

The judgment is reversed.

ALL CONCUR.