RENDERED:  JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0883-MR

ELIZABETH NAPIER AND BRUCE
NAPIER                                                                          APPELLANTS


v.                          APPEAL FROM PERRY CIRCUIT COURT
                            HONORABLE ALISON C. WELLS, JUDGE
                            ACTION NO. 20-CI-00175


TED NACE                                                                            APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND K. THOMPSON,
JUDGES.[1]

THOMPSON, K., JUDGE:  Bruce and Elizabeth Napier appeal from the judgment

of the Perry Circuit Court which awarded Ted Nace damages for breach of an

---

[1] Judge Kelly Thompson authored this Opinion before his tenure with the Kentucky Court of Appeals expired on December 31, 2022.  Judge Denise G. Clayton concurred in this Opinion prior to her retirement from the Court of Appeals.  Release of this Opinion was delayed by administrative handling.

installment land contract. We affirm because this was an appropriate remedy and the judgment is supported by substantial evidence.

On September 6, 2018, the Napiers and Nace entered a written installment land contract which was titled Bond for Deed. Pursuant to this agreement, Nace was to pay the Napiers a total of $50,000.00 for a house and parcel of land located in Perry County, Kentucky. In accord with the agreement, Nace paid $10,000.00 down and was to continue to pay $500.00 per month towards the balance while having the right to possession of the property during the payment term.

The agreement stated that "any money received prior to the full $50,000.00 being paid is considered to be rental and does not create any equity interest in [Nace]." Once Nace had paid the full amount per the agreement, the Napiers would transfer title of the property to Nace "with full covenants of general warranty . . . ."

During Nace's occupancy, Julie Parks, sister of Elizabeth Napier, put up a "No Parking" sign on the parking area next to the home on the property causing doubt as to what the boundaries of the property actually were contrary to representations made by the sellers to buyer. Nace would later testify he was also threatened by Parks and her brother who was also a sibling of Elizabeth. The

Napiers did nothing to confirm the legal boundary of the land they were ostensibly going to transfer to Nace or anything to cause Parks to stop harassing Nace.

Nace retained counsel and did not make a payment in April 2020. However, from October 2018, through February 2020, Nace had paid $700.00 per month, and paid $500.00 in March 2020, which resulted in a $3,400.00 credit. Despite this, by letter dated April 14, 2020, the Napiers threatened Nace with eviction if he did not pay them $1,000.00 by May 6, 2020. The Napiers also sent Nace a number of harassing text messages.

On May 20, 2020, Nace filed a complaint in Perry County alleging that the Napiers had breached the agreement by harassing him and forcing him to abandon the property. Nace did not seek recoupment of the $500.00 monthly payments he had made, only his down payment and the excess $3,400.00 he had paid over the course of the preceding two years.

A bench trial was conducted on May 21, 2021 and the parties submitted post-trial briefs to the court. The Perry Circuit Court entered its findings of fact, conclusions of law, and judgment on June 29, 2021. Amongst its findings, the circuit court determined Julie Parks had "clearly set up a cla[i]m to a portion of the property Mr. Nace was told he was purchasing[,]" and the Napiers "by their inaction have evidenced their intent to breach the terms of the agreement" as to the property they told Mr. Nace he was purchasing against the claims of Julie Parks,

and "[t]heir actions in sending an eviction notice and their texts demanding [Nace] vacate the property were a breach of the contract because Mr. Nace was entitled to possession of the property[.]"

Finding the Napiers in breach of the agreement, the circuit court awarded Nace at total of $13,400.00 which represented his down payment of $10,000.00 and the $3,400.00 he had paid in excess of the agreement's $500.00 monthly installments.

The Napiers do not take issue with the circuit court's factual findings, the other conclusions it drew from those findings, or the amount of damages awarded. Their only argument on appeal is that Nace waived his only lawful remedy for breach, which they assert was a judicial sale of the property. Therefore, this appeal is limited only to that issue.

The question of what damages or relief may be afforded by a court is an issue of law. "When the outcome of a case turns on an issue of law . . . appellate review is *de novo*." *Western Kentucky Coca-Cola Bottling Co., Inc. v. Revenue Cabinet*, 80 S.W.3d 787, 790 (Ky.App. 2001).

The Napiers argue that the Kentucky Supreme Court's opinion in *Sebastian v. Floyd*, 585 S.W.2d 381 (Ky. 1979), and the Court of Appeal's later decision in *Slone v. Calhoun*, 386 S.W.3d 745 (Ky.App. 2012), stand for the proposition that the only remedy available to Nace to resolve an alleged breach of

-4-

the land contract was the judicial sale of the property. The Napiers argue a judicial sale "would result in a judgment that would quiet title and determine the parties['] respective rights to the proceeds therefrom."

Importantly, in both *Sebastian* and *Slone*, the Courts were considering the proper remedy for the *seller* upon the *buyer's* default. In *Sebastian*, the issue before our Supreme Court was whether a clause in an installment land sale contract providing for forfeiture of the buyer's payments upon the buyer's default could be enforced by the seller. The Court ruled that when an installment land contract is used as a means of financing the purchase of property, the seller's interest, being bare legal title, is to be treated as a lien on the property to secure payment, requiring a seller to seek a judicial sale of the property upon the purchaser's default; thus, the forfeiture clause in the installment land contract would not be enforced. The Court in *Sebastian* ruled that "[t]he *seller's* remedy for breach of the contract is to obtain a judicial sale of the property." *Sebastian*, 585 S.W.2d at 384 (emphasis added). The Court did not hold that such a sale would be a buyer's only remedy for a breach on the part of the sellers.

The Court stated:

> There is no practical distinction between the land sale contract and a purchase money mortgage, in which the seller conveys legal title to the buyer but retains a lien on the property to secure payment. The significant feature of each device is the seller's financing the buyer's

-5-

purchase of the property, using the property as collateral for the loan.

. . .

. . . We are of the opinion that a rule treating the seller's interest as a lien will best protect the interests of both buyer and seller. Ordinarily, the seller will receive the balance due on the contract, plus expenses, thus fulfilling the expectations he had when he agreed to sell his land. In addition, the buyer's equity in the property will be protected.

*Id.* at 383.

In *Slone*, the Court of Appeals simply followed the precedent established in *Sebastian* but added, "[n]ot only does [the defaulting buyer] have an equitable ownership interest in the property to the extent of the monthly payments that were made thereon over a period of approximately four years, [the defaulting buyer] also has redemption rights in the property under applicable Kentucky law. Kentucky Revised Statutes 426.530." *Slone*, 386 S.W.3d at 748.

*Sebastian* and *Slone* establish that under a seller-financed land contract, sellers are to be treated as mortgagors when a buyer subsequently defaults. They do not limit buyers to the remedy of a judicial sale when it is the sellers who default. In this present matter it was the buyer, who was determined by the circuit court to not be in default, that prosecuted a breach of contract action against the sellers; not the sellers who, upon a default by the buyer, were seeking to quiet the redemption rights and equitable ownership interests accrued by the buyer.

-6-

It would be fundamentally unfair to limit Nace's damages to the proceeds of a judicial sale. The Napiers received value for Nace's "rental" of the property and are not entitled to retain Nace's additional down payment and excess payments.

Having determined that Nace was not prohibited as a matter of law from seeking and being awarded monetary contract damages for the Napiers' breaches of the land sale contract, we need not address their second argument that Nace allegedly waived his right to cause a judicial sale of the property.

Accordingly, the judgment of the Perry Circuit Court is affirmed.


ALL CONCUR.


BRIEF FOR APPELLANTS:                    BRIEF FOR APPELLEE:

Jeremy R. Morgan                         Frank C. Medaris, Jr.
Hazard, Kentucky                         Hazard, Kentucky