RENDERED:  APRIL 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0221-MR


JACOB M. BLANTON AND
DANIELLE S. RATH                                                        APPELLANTS


|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| v. | HONORABLE JULIE KAELIN, JUDGE |
|  | ACTION NO. 23-CI-006796 |


SCOTT RIEF                                                                    APPELLEE


OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE:  Jacob M. Blanton and Danielle S. Rath (hereinafter

collectively "the tenants") appeal from the Jefferson Circuit Court's Opinion and

Order, entered January 23, 2024, dismissing their complaint alleging negligence,

negligence *per se*, breach of contract, and an entitlement to punitive damages

against Scott Rief (hereinafter "the landlord") pursuant to Kentucky Rules of Civil

Procedure (CR) 12.02(f) for failure to state a claim upon which relief can be granted. After careful review of the briefs, record, and law, we reverse the court's dismissal of the tenants' breach of contract claim, affirm on all other claims, and remand for further proceedings.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Because this is an appeal from a CR 12.02(f) dismissal, the allegations of the complaint must be taken as true, and so we recite them here as facts.

In November 2021, the tenants executed a written lease with the landlord for a residence located in Louisville, Kentucky, and they and their four children began residing there in the same month. The landlord agreed in the lease to be responsible for "minor repairs not due to default."[1]

In October 2022, the tenants discovered mold, later confirmed by testing to be toxic black mold, in the laundry room, the kitchen, and the master bathroom, and they notified the landlord. Initially, the landlord did not respond to the tenants' complaint, blocked their subsequent communications, and made no effort to repair the problem. In June 2023, the tenants hired an independent inspector to document the conditions of the home, and the inspector identified

---

[1] Although we are required to accept the pleadings as true, we must note that the tenants' recitation of the repair clause, on which they base their argument for breach of contract, is refuted by the lease attached to the complaint. The lease, which is not signed, provides that the landlord was responsible for *major* repairs and the tenants were responsible for minor repairs or those caused by improper conduct.

additional, unspecified, possible health and safety concerns. The tenants also contacted "Building and Zoning," and, as a result, the landlord was cited for a number of emergency violations, to be corrected within 24 hours, related to mold in the laundry room and the master bathroom as well as an active sewer leak in the latter. The landlord still took no action until he was threatened with fines from Code Enforcement.

Between July 12 and 14, 2023, the landlord hired plumbers to address water leaks and other fixture issues. Additionally, the landlord and his father attempted to remediate the mold in the laundry room and the master bathroom; however, they did not use the proper tools or protocols and, as a result, they aerosolized the mold spores and cross-contaminated the material throughout the home. After the landlord's efforts at repair, the tenants could smell mold and they observed mold growth and sewer damage in areas where they were not previously. Additionally, they and their children began to experience fatigue, sore throats, itchy eyes, inflammation, chills, vomiting, diarrhea, skin rashes, headaches, memory loss, anxiety, depression, and nausea, and they all required medical treatment for their exposure to mold. Blanton documented the worsening conditions of the residence, missing work and losing wages to do so, and notified the landlord.

The landlord insisted the home was safe, but he eventually made additional, but ineffective, attempts at remediation. He hired contractors, but they were uncertified, untrained, and inexperienced, and the landlord ordered them to cut corners, limit testing, create protocols inconsistent with testing, and cut costs, which resulted in shoddy, partial, or incomplete work. He tested for mold a second time in September 2023, but, against industry protocols, he instructed the testing company not to assess the tenants' possessions. He then hired a second remediation company, but he intentionally had them create a work plan based on the incomplete testing and without consideration for the condition of the structure, its systems, or the contents within.

Dissatisfied with the landlord's efforts, the tenants completed an independent round of microbial testing, at their own cost, and offered to hire properly trained professionals to perform the remediation. The landlord responded that he "would not be remediating the home at all[] until the [tenants] did the work themselves[,] [b]ut . . . that the remediation needed to be completed by a certified specialist company." To protect their health and prevent cross-contamination, the tenants abandoned the residence as well as all of their possessions stored in the home, including important records and irreplaceable family mementos. Since then, the landlord has obstructed the tenants from collecting their insurance policy

benefits for living expenses and property damage, and he has threatened to evict them if they do not remove their contaminated property.

Based on these facts, the tenants filed their complaint on October 31, 2023, and asserted the following claims. (1) Negligence for the landlord's breach of his duty of reasonable care to maintain the residence in a reasonably safe condition free of toxic mold, and, further, to inspect, investigate, remediate, and make the residence safe from dangerous hazards that may cause injury to the tenants. (2) Negligence *per se* for the landlord's violation of the Uniform Residential Landlord and Tenant Act (URLTA), specifically Kentucky Revised Statutes (KRS) 383.595, by failing to comply with applicable building and housing codes that materially affect the tenants' health and safety and to make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. (3) Breach of contract for the landlord's disregard of his obligation under the terms of the lease to make minor repairs, asserting that at the time the issue was first reported to the landlord it was minor in nature. And (4), punitive damages for the landlord's egregious conduct constituting oppression, fraud, malice, recklessness, and/or gross disregard for the tenants' rights. For compensatory damages, the tenants sought past and future physical and mental pain and suffering, past and future medical bills, as well as lost business opportunities, wages, and earning capacity.

The landlord answered and moved to dismiss pursuant to CR 12.02(f), asserting that the tenants had failed to state a claim upon which relief can be granted. After affording the tenants an opportunity to respond to the motion, the circuit court granted the landlord's requested relief and dismissed the complaint via an Opinion and Order entered January 23, 2024. In the order dismissing, the court concluded that the landlord had no duty under the common law to maintain or repair the residence, recovery for personal injuries was not available under any theory as pled, the breach of contract claim was not viable since the tenants had not stated any cost of repair damages, and punitive damages were not an independent claim and, moreover, necessarily not available since the tenants' tort claims had been dismissed. This appeal timely followed.

**STANDARD OF REVIEW**

A motion to dismiss for failure to state claim upon which relief may be granted, pursuant to CR 12.02(f), should not be granted "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari-Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL-CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977); *see also Edmonson Cnty. v. French*, 394 S.W.3d 410, 413 (Ky. App. 2013). On review, the only issue is whether the facts as pleaded in the complaint afford the pleading party relief. *Huie v. Jones*, 362 S.W.2d 287, 288 (Ky. 1962). Because

the resolution of this case concerns an issue of law, rather than an issue of fact, our review is *de novo*. *Western Kentucky Coca-Cola Bottling Co., Inc. v. Revenue Cabinet*, 80 S.W.3d 787, 790 (Ky. App. 2001).

## ANALYSIS

On appeal, the tenants argue generally that the court disregarded its obligation to accept the pleadings as true and to afford them all reasonable inferences when it erroneously dismissed the complaint. We will address their specific arguments in turn.

First, to state a viable claim of common law negligence, the tenants must establish that: (1) the landlord owed them a duty of care, (2) that he breached his duty, and (3) that the tenants suffered injuries as a result. *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 906 (Ky. 2013) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003)). In Kentucky, the general rules are that a tenant takes the rented premises as is, and a landlord need not exercise even ordinary care to furnish reasonable safe premises. *Milby v. Mears*, 580 S.W.2d 724, 728 (Ky. App. 1979).

Additionally, as stated in *Joiner v. Tran & P Properties, LLC*, "a landlord will not be liable for injuries caused by defects in the leased premises unless the condition is unknown to the tenant and not discoverable through reasonable inspection." 526 S.W.3d 94, 101 (Ky. App. 2017) (quoting *True v.*

-7-

*Fath Bluegrass Manor Apt.*, 358 S.W.3d 23, 26 (Ky. App. 2011)). The tenants rely on this language to argue that they sufficiently stated a cause of action for negligence when they pleaded personal injuries caused by defects in the leased premises that were unknown to them and not discoverable through a reasonable inspection. Concluding that *Joiner* is not a complete statement of the applicable law, we must disagree.

For the proposition at issue, *Joiner* ultimately cites to *Milby*, 580 S.W.2d at 728, which states in full that a landlord has "a duty **to disclose a known defective condition** which is unknown to the tenant and not discoverable through reasonable inspection." *Id.* (emphasis added); *see also Waugh v. Parker*, 584 S.W.3d 748, 751-52 (Ky. 2019), wherein the Supreme Court of Kentucky reiterated that "landlords generally do not owe any duty to a tenant except to warn of any latent dangerous conditions that may exist on the property." Accordingly, the landlord's prior knowledge of the mold is a fact necessary to establish that he owed the tenants a duty of care.

The tenants overlooked this requirement in their recitation of the law and, unsurprisingly, failed to identify where the requisite factual claim was raised in their complaint. From our review of the pleading, the only relevant statement was that the tenants discovered the mold in October 2022, almost a full year after they took residency. As this does not create a reasonable inference that the

landlord knew of the issue prior to November 2021, the court did not err in concluding that the tenants had failed to state a claim of negligence for which relief may be granted.

We turn now to the tenants claim of negligence *per se* for the landlord's violation of KRS 383.595 of the URLTA for failing to repair or keep the premises in a safe and habitable condition. Citing *Miller v. Cundiff*, 245 S.W.3d 786 (Ky. App. 2007), wherein a panel of this Court held that the URLTA does not expand landlord liability beyond the common law to include personal injuries arising from defects in the leased premises, the court concluded that the tenants' claims for such damages failed as a matter of law. The court further determined that the tenants' failure to utilize the remedies provided by the URLTA, relevantly remediating the mold at the landlord's expense, similarly supported dismissal.

On appeal, the tenants do not contest their inability to obtain personal injury damages. They do, however, assert that the court disregarded their repair efforts and ensuing costs, hiring a home inspector to document the conditions of the residence, and their paying for microbial testing, when it dismissed their claim. We disagree. Setting aside the issue of whether the tenants' expenditures qualify as repair costs, the court correctly determined that their negligence *per se* claim failed as a matter of law.

The statutory authority for a negligence *per se* action arises under KRS 446.070, which states that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." The effect of a negligence *per se* claim is to replace the common law standard of care with a statutory standard, *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012), which in this case is a duty to make repairs to the residence to keep it habitable. However, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Waugh*, 584 S.W.3d at 753 (quoting *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)).

The URLTA expressly sets out remedies for an aggrieved party to obtain relief, *see* KRS 383.625-.705, and, therefore, it cannot serve as the basis for a negligence *per se* claim. Indeed, the Supreme Court of Kentucky so held in *Waugh*, albeit while addressing a claim for personal injury damages. 584 S.W.3d at 753. And although the tenants do not specifically argue that repair costs, as a viable form of damages under the URLTA, necessitates a different result, we conclude that the distinction is immaterial because the act proscribes the procedure for obtaining relief in addition to setting the possible damages. To put it more

simply, the tenants cannot proceed for damages permitted under the URLTA via negligence *per se*, and the court did not err in dismissing the tenants' claim.

Next, finding that the tenants had not alleged that they paid for repairs, the court dismissed their breach of contract claim. On appeal, the tenants renew their argument that the court committed reversible error by disregarding their assertions that they hired a home inspector to document the conditions of the residence and that they paid for microbial testing. The landlord maintains that we should affirm because the tenants did not assert a claim for costs of repair in their complaint. We shall address the landlord's contention first.

The landlord is correct that the tenants did not identify repair costs as one of their enumerated claims for damages. However, the tenants did include a general prayer for any and all other relief to which they are properly entitled, and the failure to ask for the correct relief does not alone support dismissal on the pleadings if the complaint showed that they were entitled to any relief that the court may properly grant. *Fergerson v. Utils. Elkhorn Coal Co.*, 313 S.W.2d 395 (Ky. 1958) (citing CR 54.03 which provides that a court "shall grant the relief to which the party . . . is entitled, even if the party has not demanded such relief in his pleadings"). Accordingly, we cannot affirm merely on the basis that the tenants did not specifically request cost of repair damages. The question is whether the court correctly determined that the complaint did not demonstrate an entitlement to

repair costs. *See Joiner*, 526 S.W.3d at 102 ("Kentucky law provides that the remedy for breach of an agreement to repair is the cost of the repair.").

We reject the tenants' argument that the hiring of a home inspector for the stated purpose of documenting the condition of the residence qualifies as a recoverable repair cost. Paying for testing, however, is a closer call. Because we cannot say that the tenants would not be entitled to recovery of this cost under any set of facts, we reverse the court's dismissal of the breach of contract claim and remand for further proceedings.

Finally, we turn to the issue of punitive damages. The court dismissed the claim after concluding that punitive damages are not an independent cause of action and that a claim for punitive damages cannot be maintained after the underlying tort claims are dismissed. Asserting that their tort claims should be reinstated, the tenants argue that they should be permitted an opportunity to pursue punitive damages thereon. Because we have already determined that the tenants' tort claims were properly dismissed, this argument is without merit, and we need not further address this issue.

## CONCLUSION

Based on the forgoing, we affirm the circuit court's dismissal of the tenants' negligence, negligence *per se*, and punitive damage claims, and we

-12-

reverse the dismissal of their breach of contract claim and remand for further proceedings.

McNEILL, JUDGE, CONCURS.

COMBS, JUDGE, CONCURS AND FILES SEPARATE OPINION.

COMBS, JUDGE, CONCURRING: This case is a painful reminder and *caveat* that the codification of common law causes of action can result in harmful outcomes not envisioned by the good intentions underlying the statutory enactment. The majority Opinion wisely left open the possibility for the trial court to grant "any and all relief" to which the tenants may properly be entitled under their claim for breach of contract entailing costs of repair.

BRIEF FOR APPELLANTS:

S. Coy Travis
New Albany, Indiana

BRIEF FOR APPELLEE:

Gregory L. Smith
Louisville, Kentucky

David Kellerman
Louisville, Kentucky